United States District Court
Southern District of Texas
**ENTERED**
July 13, 2020
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **ARTHUR DEWAYNE HARRISON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 4:19- 2304** |
| | § | |
| **ANDREW SAUL,** | § | |
| **COMMISSIONER OF THE** | § | |
| **SOCIAL SECURITY ADMINISTRATION,** | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM AND ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Magistrate Judge[12] in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No. 11), Defendant's Response to Plaintiff's Motion for Summary Judgment (Document No. 12), Defendant's Motion for Summary Judgment (Document No. 10), and Plaintiff's Response to Defendant's Motion for Summary Judgment. (Document No. 13).   After considering the cross motions for summary judgment, the administrative record, and the applicable law, the Magistrate Judge ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment (Document No. 10) is GRANTED, Plaintiff's Motion for Summary Judgment (Document No. 11) is DENIED, and the decision of the Commissioner is AFFIRMED.

**I. Introduction**

---

[12] The parties consented to proceed before the undersigned Magistrate Judge on September 27, 2019.  (Document No. 9).

Plaintiff, Arthur Harrison ("Harrison") brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration ("Commissioner") denying her applications for disability benefits ("DIB"), and Supplemental Security Income ("SSI"). Harrison argues that the Administrative Law Judge ("ALJ") committed errors of law when he found that Harrison was not disabled. Harrison argues that the ALJ, Kelly Matthews, erred in formulating Harrison's mental impairment, residual functional capacity ("RFC"), and made an improper step five finding. Harrison seeks an order reversing the ALJ's decision, and awarding benefits, or in the alternative, remanding her claim for further consideration. The Commissioner responds that there is substantial evidence in the record to support the ALJ's decision that Harrison was not disabled, that the decision comports with applicable law, and that the decision should, therefore, be affirmed.

## II.   Administrative Proceedings

On May 20, 2016, Harrison filed applications for DIB and SSI claiming disability since February 16, 2011, due to neck problems, spinal nerve damage, "PTSD", anxiety, and depression. (Tr. 191-198, 220). The Social Security Administration denied his applications at the initial and reconsideration stages. (Tr. 55-56, 83-84). Harrison then requested a hearing before an ALJ. (Tr. 140). The Social Security Administration granted his request, and the ALJ held a hearing on February 27, 2018. (Tr. 32-54). On May 2, 2018, the ALJ issued her decision finding that Harrison was not disabled (Tr. 14-25).

Harrison sought review by the Appeals Council of the ALJ's adverse decision. (Tr. 188). The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an

error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings, or conclusions; (4) a broad policy issue may affect the public interest or (5) there is new and material evidence and the decision is contrary to the weight of all the record evidence. After considering Harrison's contentions in light of the applicable regulations and evidence, the Appeals Council, on October 5, 2018 concluded that there was no basis upon which to grant Harrison's request for review (Tr. 1-8).  Accordingly, the ALJ's findings and decision thus became final.

Harrison has timely filed his appeal of the ALJ's decision. The Commissioner has filed a Motion for Summary Judgment (Document No. 10). Likewise, Plaintiff has filed a Motion for Summary Judgement (Document No. 11). This appeal is now ripe for ruling.

The evidence is set forth in the transcript pages 1-1614. There is no dispute as to the facts contained therein.

### III.  Standard for Review of Agency Decision

The court, in its review of a denial of disability benefits,  is only "to [determine] (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999).   Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision as follows: "[t]he findings of  the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The Act specifically grants the district court the power to enter judgment, upon the pleadings, and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the case for a rehearing" when not supported by substantial evidence.  *Id.*  While it is incumbent upon the court to examine the record in its entirety to decide

whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh  the evidence in the record nor try the issues de novo, nor substitute its judgment" for that of the Commissioner even if the evidence preponderates against the Commissioner's decision.  *Chaparo v. Bowen*, 815 F.2d 1008, 1009 (5th Cir. 1987); *see also Jones* at 693; *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985).  Conflicts in the evidence are for the Commissioner to resolve.  *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)).  Substantial evidence is "more than a scintilla and less than a preponderance."  *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993).  The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"  *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quoting *Hemphill v. Weinberger*, 483 F.2d 1127 (5th Cir. 1973)).

## IV.  Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving her disability.  *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988).  The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C.  § 423(d)(1)(A).  The impairment must be proven through medically

accepted clinical and laboratory diagnostic techniques.  *Id.*   § 423(d)(3).  The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [he] lives, or whether a specific job vacancy exists for [him], or whether [he] would be hired if [he] applied for work.

*Id.*  § 423(d)(2)(A).  The mere presence of an impairment is not enough to establish that one is suffering from a disability.  Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity."  *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milan v. Bowen*, 782 F.2d 1284 (5th Cir. 1986)).  If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends.  *Leggett*, 67 F.3d at 563.[2]

The Commissioner applies a five-step sequential process to determine disability status:

1.  If the claimant is presently working, a finding of "not disabled" must be made;

2.  If the claimant does not have a "severe" impairment or combination of impairments, he will not be found disabled;

3.  If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits  are awarded;

4.  If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

---

[2] Several of the Social Security Rulings ("SSRs") governing social security cases were amended or rescinded in 2016 and 2017.  *See, e.g.,* 81 Fed. Reg. 66138-01, 2016 WL 5341732 (F.R. Sept. 26, 2016); 82 Fed. Reg. 5844-01, 2017 WL 168819 (F.R. Jan. 18, 2017).  Depending on the regulation, the new rules apply to claims filed either on or after January 17, 2017, or March 27, 2017.  The regulations provide, in pertinent part, that "[w]e expect that Federal Courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").  Because Harrison filed his applications prior to January 17, 2017, the Court will cite to the old rules that are applicable to claims filed prior to 20bl17.

    5.  If  the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience, and residual functional capacity, he will be found disabled.

*Id.*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).  Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists.  If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work.  *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  Once the Commissioner demonstrates that other jobs are available, the burden shifts, again, to the claimant to rebut this finding.  *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 563[3].

    In this instant action, the ALJ determined, in her May 5, 2018, decision that Harrison was not disabled at step five. In particular, the ALJ determined that Harrison met the insured status requirements of the Social Security Act through December 31, 2016, and that Harrison had not engaged in substantial gainful activity since February 16, 2011, the alleged onset date (step one); that Harrison's posttraumatic stress disorder, depression, spine disorder, and obesity were severe impairments (step two); that Harrison did not have an impairment or combination of impairments that met or medically equated one of the listed impairments in Appendix 1 of the

---

[3] Several of the Social Security Rulings ("SSRs") governing social security cases were amended or rescinded in 2016 and 2017. See, e.g., 81 Fed. Reg. 66138-01, 2016 WL 5341732 (F.R. Sept. 26, 2016); 82 Fed. Reg. 5844-01, 2017 WL 168819 (F.R. Jan. 18, 2017). Depending on the regulation, the new rules apply to claims filed either on or after January 17, 2017, or March 27, 2017. The regulations provide, in pertinent part, that "[w]e expect that Federal Courts will review our final decisions using the rules that were in effect at the time we issued the decisions."). Because Travis filed her application for DIB prior to January 17, 2017, the Court will cite to the old rules that are applicable to claims filed prior to 2017.

regulations (step three); that Harrison had the RFC to perform light work with the following limitations:

> The claimant can understand, remember, and carry out simple instructions and make simple decisions; can occasionally interact with the public, and the interaction should be superficial to the job; can never climb ropes, ladders, or scaffolds; and can occasionally climb ramps or stairs (due to obesity and spine disorder). (Tr. 20).

The ALJ further found that Harrison could not perform any past relevant work as a stevedore or correction officer as actually or generally performed (step four); and that based on Harrison's RFC, age (45), education (high school), work experience, and the testimony of a vocational expert, that Harrison could perform work as a shipping and receiving weigher, a price marker, and a laundry press operator, and that Harrison is not disabled within the meaning of the Act (step five). As a result, the Court must determine whether substantial evidence supports the ALJ's step five finding.

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating, examining and consultative physicians on subsidiary questions of fact; (3) subjective evidence as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history, and present age. *Wren*, 925 F.2d at 126.

## V. Discussion

### A. Objective Medical Evidence

The objective medical evidence shows that Harrison has been diagnosed with and treated for posttraumatic stress disorder, depression, spine disorder, and obesity since 2011. Harrison's knee pain and high blood pressure were not found to be severe, as the knee pain began after a fall in June of 2017 and his blood pressure is reasonably controlled with medication.  By way of background information, Harrison sustained a Workers Compensation injury in October of 2007.

While working as a correctional officer, Harrison fell after being kicked in the face trying to restrain an inmate. Harrison reached maximum medical improvement on March 5, 2008 with a 10% permanent impairment rating with 5% impairment rating for cervical and lumbar spine with no evidence of nerve root compression nor herniated disk identified. (Tr. 366).

From 2010 - 2011, Harrison was seen regularly by UT Health Physicians for ongoing problems regarding his accident. Harrison was treated by Dr. Altman at UT Physicians Family Practice and with Dr. Varner in the UT Physicians Neurology group for acute post-traumatic stress disorder, anxiety, cervicalgia, depression, hypertension, lower back pain, myofascial pain syndrome, neck sprain, and tingling. (Tr. 352).  Additionally, Harrison was seen by Dr. Covert who diagnosed him with PTSD, Anxiety and Depression (355). Harrison had an EMG in March 2011, which revealed moderate radiculopathy with irritation in the C7 and C8 nerve roots. (Tr. 408). An MRI of the cervical spine revealed a degenerative disc disease at C4-C5 and right uncal arthropathy at C3-4 and C4-C5 but there was no cord compression, canal stenosis, foraminal narrowing, or nerve root impingement. (Tr. 344). Both Dr. Altman and Dr. Varner recommended that Harrison attend physical therapy sessions, however, Harrison did not follow up with these recommended sessions (Tr. 366).

Starting in November 2015, Harrison began receiving treatment at Ben Taub General Hospital and the MLK Health Center for hypertension and joint pain. (Tr. 1460-1465). These medical records show that  Harrison was having no side effects from medications but was not meeting his goal for blood pressure, as he missed prescribed doses (Tr. 1461). Dr. Antoine-Taylor charted that Harrison was not currently taking any medication. (Tr. 1462).  Harrison's physical exam revealed a 42.18 BMI and a blood pressure reading 129/82. (Tr. 1462). Tenderness was noted in his musculoskeletal system. (1462). Dr. Antoine-Taylor diagnosed

Harrison with hypertension, chronic neck and back pain, bilateral hip pain and obesity. (Tr. 1463).

An assessment done by the Harris Health system in September 2017 shows that Harrison has primary symptoms of hyperarousal, easy irritability/anxiety, and insomnia with periods of low mood and vague psychosis. (Tr. 1202). Harrisons medications included Prozac, Seroquel, Atarax, prazosin, and BuSpar. (Tr. 1203). His mental status examination showed that Harrison was awake, alert, and oriented times three; normal speech; no psychomotor abnormalities; okay mood; low intensity by reactive affect; logical and concrete thought process; no suicidal or homicidal ideation, hallucinations, or delusions; intact memory and fair/good insight/judgement. (Tr. 1202).

Here, substantial evidence supports the ALJ's finding that Harrison's disorders of posttraumatic stress disorder, depression, spine disorder, and obesity were severe impairments at step two, and that such impairments at step three, individually or in combination, did not meet or equal a listed impairment.  This factor weighs in favor of the ALJ's decision.

## B.  Diagnosis and Expert Opinion

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact. The Social Security regulations require the Commissioner to evaluate every medical opinion it receives, regardless of its source.  20 C.F.R. § 404.1527(c).   The regulations provide in pertinent part that "[m]edical  opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R.  § 404.1527(a)(1).  The ALJ has the ultimate responsibility to

determine disability status.  *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). When good cause is shown, less weight, little weight, or even no weight may be given to a treating physician's opinion.  *Id.*   The Fifth Circuit in *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) held that when a treating physician's opinion about the nature and severity of a claimant's impairment is well-supported and consistent with other substantial evidence, an ALJ must afford it controlling weight.  The Fifth Circuit further instructed that an ALJ has good cause to discount an opinion on a treating physician where "the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence."  *Id.* at 456.  In such a situation, the ALJ must assess what weight the opinion should be given based on factors enumerated in 20 C.F.R. § 404.1527(c).  Those factors include: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; (6) the specialization of the treating physician; and, (7) any other considerations.  *Id.* These factors need not be considered when there is "competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another," or when "the ALJ weighs treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion."  *Newton*, 209 F.3d at 458.  Simply put: "[t]he Newton court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it."  *Qualls v. Astrue*, 339 F.Appx. 461, 467 (5th  Cir. 2009).

The social security regulations make a clear distinction between the deference given to a medical opinion from a treating physician as opposed to a medical opinion from an examining

physician. As discussed above, the treating physician rule provides that the opinion of a claimant's treating physician is entitled to great weight. *See Newton,* 209 F.3d at 455. A consultative physician is a physician designated and employed to make medical judgments by the Social Security Administration. *See* 20 C.F.R. § 404.1526(d). A consultative physician may personally examine the claimant. *See id.* The deference provided to treating physicians' opinions does not extend to consultative examining physicians. 20 C.F.R. § 404.1527(c). "[W]here the examining physician is not the claimant's treating physician and where the physician examined the claimant only once, the level of deference afforded his opinion may fall correspondingly." *Rodriguez v. Shalala*, 35 F.3d 560, 1994 WL 499764, at *2 (5th Cir. 1994). As for the opinions of State Agency Medical Consultants, the regulations provide, in pertinent part:

> Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists. State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence, except for the ultimate determination about whether you are disabled. . . .

20 C.F.R. § 404.1527(e)(2)(i), 416.927(e)(2)(i)(effective August 24, 2012-March 26, 2017).

*Ventura v. Colvin*, No. 6:-CV-16, 2017, WL 1397130, at *12 (S.D. Tex. Feb. 27, 2017), *adopted*, 2017 WL 1397131 (S.D. Tex. Mar. 30, 2017). "In evaluating the opinion of a non-treating physician, the ALJ is free to incorporate only those limitations that he finds 'consistent with the weight of the evidence as a whole.'" *Thompson v. Colvin*, No. 4:16-CV-00553, 2017 WL 1278673, at *12 (S.D. Tex. Feb. 14, 2017)(citing *Andrews v. Astrue*, 917 F.Supp. 2d 624, 642 (N.D. Tex. 2013). "The ALJ cannot reject a medical opinion without an explanation." *Loza v.*

*Apfel*, 219 F.3d 378, 395 (5th Cir. 2000); *Kneeland v. Berryhill,* 850 F.3d 749, 761 (5th Cir. 2017)(ALJ committed error in failing to address examining physician's conflicting opinion thereby making it impossible to know whether the ALJ properly considered and weighed the opinion); *but see Hammond v. Barnhart*, 124 Fed. Appx. 847, 851 (5th Cir. 2005)(failure by ALJ to mention a piece of evidence does not necessarily mean that the ALJ failed to consider it). Thus the absence of an express statement in the ALJ's written decision does not necessarily amount to reversible error because procedural perfection of administrative proceeds is not required. *See, e.g., Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); *Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012)("The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error.").

RFC is what an individual can still do despite his limitations. It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *2 (SSA July 2, 1996). The RFC determination is "the sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).

Harrison argues that substantial evidence does not support the ALJ's evaluation of Harrison's RFC in regards to his mental impairment. Specifically, Harrison argues that the ALJ improperly substituted her own medical lay opinion for that of a qualified medical expert, and that the ALJ's residual functional capacity fails to take account of his psychological problems. Harrison claims that the ALJ erred in not following precedent set in *Newton* and that the medical records from the Plaintiff's treating psychologist correspond to limits in excess of those found by the ALJ. In formulating his RFC,  Harrison points to (1) the GAF score of 45 given by Dr.

Covert, and (2) that Dr Jones had told Harrison he was not ready to go back to work and needed to continue to focus on his treatment.

The Commissioner counters that substantial evidence supports the ALJ's RFC. The Commissioner countered that  Harrison's GAF score and Dr. Covert's recommendation were given in 2011 and were inconsistent with  more recent medical opinions. (Tr. 355). The Commissioner points to treatment and a  note from March 2018, which shows only that Dr. Jones stated that Harrison will need frequent check-ins with psychiatry for medication management and regular ongoing psychotherapy. The note did not mention or suggest that Harrison should not return to work.  (Tr. 1608).

The law clearly states  that an ALJ may not reject a medical opinion without an explanation. *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017).  The claimant argues that the ALJ did not follow this rule, but in fact the ALJ did just that. While evidence from earlier years shows Harrison's mental impairments were more moderate/severe,  the ALJ explained that the opinions concerning intensity, persistence, and limiting effects of sympotms that the claimant argues for are not entirely consistent with more recent  medical evidence provided in the record. (Tr. 21). One of Harrison's arguments regarding a GAF score of 45 from  2010 is specifically inconsistent with the 2017 record where he consistently received a GAF score ten points higher, at 55. (Tr. 1215).

Harrison argues that that the record does not support the ALJ's determination of an RFC to perform light work with simple instructions, simple decisions, occasional superficial interactions with the public, never climb ropes, ladders, or scaffolds, and occasional climbing of ramps and stairs. Harrison argues that his ample impairments make him unable to perform the demands of the physical residual functional capacity outlined by the ALJ.  In a report from July

of 2011, Dr. Altman cited that his exam findings did not support restricting Harrison's work and recommended he go back to work, or, if he felt uncomfortable, to consider a different line of work. (Tr. 360).  As far back as April 2011, Dr. Altman at UT Physicians noted that Harrison's MRI and EMG reports don't provide an explanation for his pain and the  "subjective complaints did not match" his diagnosis. (Tr. 361, 370, 373). Dr. Altman noted the physical exam findings seemed disproportionately low in contrast to Harrison's reported pain level, "making it more of a challenge to achieve pain reduction." (Tr. 364).  This opinion was repeatedly noted in Dr. Altman's notes from 2011, his injury does not support his widespread complaints and his neurological sx is not matched by reassuring neurologic exam results and that further imaging studies would yield additional information.  (Tr. 373).  The ALJ recognized these inconsistencies in her findings and gave proper weight to Dr. Altman's opinion and incorporated those limitations in formulating Harrison's RFC.

In addition to Dr. Altman's opinion, Dr. Holly Varner observed that some of Harrison's physical pain was due in part to his psychiatric disease, and that would explain the drastic inconsistency between Harrison's test results and his subjective pain levels. (Tr. 399). She noted in December of 2011:

"[H]e has give-way weakness which is consistent with some embellishment of his symptoms although this is likely subconscious in etiology…. I think that his psychiatric disease would be the main determinant of any impairment rating" (Tr. 399).

There is a common theme in the expert opinions that Harrison's "perceived pain level appears magnified over objective exam findings" (Tr. 385).  Both physicians found that Harrison's symptoms "are magnified out of proportion to his exam findings, much less the amount of pain he reports based on the original described mechanism of injury" (Tr. 370).

The ALJ properly credited the State agency medical consultants, who assessed a light residual functional capacity and determined that Harrisons mental impairments were consistent with the ability to do simple work.  (Tr. 57 - 82, 85-110). The ALJ gave  weight to these opinions but added that Harrison can never climb ropes, ladders, or scaffolds, can occasionally climb ramps and stairs and that he is further limited to simple work, due to his obesity / spine disorder and his testimony, respectively.

Here, the thoroughness of the ALJ's decision shows that he carefully considered the medical records and testimony, and that his determination reflects those findings accurately. The Court concludes that the diagnosis and expert opinion factor also supports the ALJ's decision.

### C.  Subjective Evidence of Pain as Testified

The next element to be weighed is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends.  Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled. *Cook,* 750 F.2d at 395.  The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423.  The statute provides that allegations of pain do not constitute conclusive evidence of disability.  There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause pain.  Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence on the record.  42 U.S.C. § 423.  "Pain constitutes a disabling condition under the SSA only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders*, 914 F.2d at 618-19 (citing *Farrell v. Bowen*, 837 F.2d 471, 480 (5th Cir. 1988)).  Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be able

to perform. *See Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994). The Act requires this Court's findings to be deferential. The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has had the opportunity to observe the claimant. *Hames,* 707 F.2d at 166.

Here, Harrison testified about his health and its impact on his daily activities. Harrison testified that he began to experience symptoms in 2007 after sustaining injuries from an inmate attack while working as a prison guard. Harrison testified that his average pain without medicine is a ten on a scale of one to ten, and with medicine his pain level is at an eight. (Tr. 38). Harrison testified that the pain radiates through his arms, legs and hip and this makes it difficult for him to "do stairs, bend, lift things" and other daily tasks such as getting dressed, "getting in and out of the tub" and driving (Tr. 39).

Harrison's day-to-day activities include waking up and checking his pulse, taking his medications including his blood pressure medicine and Prozac followed by a bath. Harrison will then practice his breathing exercises and take his second set of medications at one o'clock. Harrison occasionally watches TV but says he spends the majority of his day taking his medications and practicing his mental exercises. (Tr. 48).

In regards to his physical impairments, Harrison testified that he received injections in September of 2017 to treat his back pain, and was planning to receive more injections in March of 2018. Harrison claims the injections relieve his back pain for about a week. (Tr. 41). In addition to the injections and soaking in the tub, Harrison testified that he takes 600 milligrams of Ibuprofen, twice a day. (Tr. 42). Harrison stated that he can walk about 60 yards before his back starts bothering him. (Tr. 42).

Harrison testified that his PTSD stems from two altercations in 2007 and 2009  with inmates while he worked at the prison. The second instance was when Harrison tried to return to work and an inmate threw feces on him. Harrison describes his PTSD symptoms as constant frustration, crying to himself, and "praying to the Lord to help get me through this". (Tr. 42). Harrison also testified that he experiences nightmares about three to four times a week and will experience flashbacks when he hears loud noises. (Tr. 42, 43). Harrison testified that the PTSD affects his sleep patterns: he claims he gets around four to five hours of sleep a night. (Tr. 46). He also discussed the methods his psychiatrist recommended to help him handle his PTSD such as listening to Beethoven, looking around the room to see what could harm him, and practicing his breathing meditations. (Tr. 43). Harrison testified that he uses these tools every day. Harrison stated that when he has his flashbacks it will take him between five to ten minutes to calm down and continue his day. (Tr. 43). Harrison also testified that he has suicidal thoughts every day. (Tr. 44).

In regards to his interactions with others, Harrison testified that he will isolate himself from others and that he doesn't feel comfortable around a lot of people. (Tr. 44). Harrison states that he is very cautious and standoffish around strangers and tries to "do the best I can." (Tr. 45). Harrison stated that he never got into an altercation with another person at work because of a PTSD outburst. (Tr. 45).

In regards to his treating doctor's opinion on returning to work, Harrison claims that his doctors do not want him to return to work, that they want him to take his medication and continue to get help with "what's going on". (Tr. 45). Harrison stated that his medications (Prozac, Ibuprofen, Gabapentin and "the blood pressure medicine") make him drowsy and he experiences this side effect every day. (Tr. 46). When it gets bad he will lay down for about 15

minutes, and in addition to the drowsiness, his medications cause him to experience dizziness to a point of falling down once or twice a week. (Tr. 47).

Harrison completed a Function Report on June 27, 2016. (Tr. 240-251).  Harrison noted that he is trying to get the proper help he needs and take his medication. (Tr. 204). Harrison described a typical day as taking a shower or bath for 20 minutes, taking his medications, trying to watch tv, and going back to sleep when his medications kick in. (Tr. 245).  Harrison indicated that his conditions have affected his ability to sometimes dress, bathe, care for hair, shave, feed himself, and use the toilet. (Tr. 245). Harrison also noted that he "can't do stairs anymore." (Tr. 245).  Harrison indicated that his mom will remind him to take his medications and make sure he eats healthy. (Tr. 246). He wrote that he is able to prepare meals for himself around 3 times a week, sometimes cereal, sandwiches and chips, and peanut butter. (Tr. 246). Harrison noted he will help vacuum and do the dishes about twice a week and these activities take him about five to ten minutes, but that they make his spine hurt worse. (Tr. 246). Harrison does not do much yard work and will go out primarily to drive to  his doctor or pick up his medications. (Tr. 246). His hobbies include watching sports when he is not asleep, going to church twice a month, and will spend time watching sports games with his family. (Tr. 248). Harrison noted that when he does not have his medications he sometimes has problems getting along with family, friends and neighbors. (Tr. 249). Harrison noted that he might be a little slower to follow written instructions since his head injury and that sometimes it's hard for him to understand spoken instructions. (Tr. 249).

The undersigned finds that there is nothing in the record to suggest that the ALJ made improper credibility findings, or that he weighed the testimony improperly. The ALJ tied her credibility findings to Harrison's testimony and the medical reports including mental status

examinations   and physical progress notes. The ALJ properly considered the claimant's testimony and Function Report in addition to medical reports of claimants described pain to determine that Harrison's subjective symptoms and pain is inconsistent on the record. The Court finds this factor weighs in favor of the ALJ's decision.

### D. Plaintiff's Educational Background, Work History, and Present Age

Here, at step four, the ALJ found that Harrison could not return to his past relevant work as a correctional officer or stevedore. The ALJ proceeded to step five. The final element to be weighed is the claimant's educational background, work history and present age.  A claimant will be determined to be under disability only if the claimant's physical or mental impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

The record shows that the ALJ questioned Rosalyn Lloyd, a vocational expert ("VE"), at the hearing.   "A vocational expert is called to testify because of [her] familiarity with job requirements and working conditions.  'The value of a vocational expert is that [s]he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (quoting *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)).  It is well settled that a vocational expert's testimony, based on a properly phrased hypothetical question, constitutes substantial evidence.  *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).  A hypothetical question is sufficient when it incorporates the impairments which the ALJ has recognized to be supported by the whole record.  Beyond the hypothetical question posed by the ALJ, the ALJ must give the claimant the "opportunity to correct deficiencies in the ALJ's hypothetical questions (including

additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." *Bowling,* 36 F.3d at 436.

The ALJ posed comprehensive hypothetical questions to the VE: (Tr. 17-18)

Q. Please identify the claimant's past relevant work.

A. Yes, your honor. Stevedore II, which is also known as a Longshoreman. Very heavy, unskilled, SVP level 2. DOT 922.687-090. Correction Officer, medium, semiskilled, SVP level 4. DOT 372.667-018.

Q. Please assume a hypothetical individual of the claimant's age, education, and work experience. This individual is capable of performing work at the light exertional level. This individual can never climb ladders, ropers, or scaffolds, and only occasionally climb ramps or stairs. This individual can understand, remember, and carry out simple instructions, and make simple decisions, and have only occasional interaction with the public, and the interaction should be superficial to the job. Could that individual perform the past relevant work?

A. No, your honor

Q. Would there be other work?

A. Yes, your honor. Shipping and Receiving Weigher. DOT 222.387-074. State of Texas, 3,000. UNited States, 155,000. Price Marker. DOT 209.587-034. State of Texas, 2,500. United States, 90,000. Laundry Press Operator. DOT 363.685-026. State of Texas, 4,500. United States, 200,000. (Tr. 17-18).

In addition, Harrison's attorney posted hypothetical questions to the VE: (Tr. 18-19).

Q. All right, Ms. LLoyd, I just have a few questions. With the hypo the judge gave you, if you were to limit that hypo individual to sedentary instead of light, could they perform -- would they be able to perform those three jobs that you gave us?

A. No.

Q. Okay. And then -- hold on a second, let me read my notes. If the hypo individual were to miss about three days a month, consistently, for doctor's appointments and therapy sessions, would they be able to sustain competitive employment in those positions?

A. No.

Q. And if the hypo individual were to be limited to no interactions with the public, would any of those three positions work?

A. They would.

Q. All three?

A. Yes. (Tr. 18-19).

A hypothetical question is sufficient when it incorporates the impairments which the ALJ has recognized to be supported by the whole record. As discussed above, the ALJ's RFC assessment is supported by substantial evidence, and was incorporated in the hypothetical question posed to the VE. Upon this record, there is an accurate and logical bridge from the evidence to the ALJ's conclusion that Harrison was not disabled. Based on the testimony of the vocational expert and the medical records, substantial evidence supports the ALJ's finding that Harrison can perform work as a shipping and receiving weigher, price marker, and laundry press operator. The Court concludes that the ALJ's reliance on the vocational testimony was proper, and that the vocational expert's testimony, along with the medical evidence, constitutes substantial evidence for the ALJ's conclusion that Harrison is not disabled within the meaning of the Act and is therefore not entitled to benefits. Additionally, it is clear from the record that proper legal standards were used to evaluate the evidence presented. Accordingly, this factor also weighs in favor of the ALJ's decision.

## VI. Conclusion

Considering the record as a whole, the Court is of the opinion that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration, which direct a finding that Price was not disabled within the meaning of the Act, that substantial evidence supports the ALL's decision, and that the Commissioner's decision should be affirmed. As such, it is

ORDERED Plaintiff's Motion for Summary Judgment (Document No.11), is  DENIED,

Defendant's Motion for Summary Judgment (Document No. 10) is GRANTED, and the decision

of the Commissioner of Social Security is AFFIRMED.

Signed at Houston, Texas, this  13th  day of July, 2020

Frances H. Stacy
United States Magistrate Judge